FILED

2006 Apr-10  PM 01:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN  DIVISION

| | | |
|---|---|---|
| Bob Nadler, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: 2:02-CV-02289-VEH |
| | } | |
| Francis J. Harvey, | } | |
| Secretary, Department of the | } | |
| Army | } | |
| | } | |
| Defendant. | } | |

## OPINION

This Court has before it the June 15, 2005, motion of Defendant Francis J. Harvey ("Defendant") for summary judgment as to all of Plaintiff Bob Nadler's claims (Doc. 34).    For the reasons set forth below, the Defendant's motion for summary judgment is due to be granted as to Plaintiff's discrimination claims under the Rehabilitation Act of 1973, §501, as amended;  29 U.S.C. §§791 and 794; and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e.

## I.  Procedural History

Plaintiff Nadler commenced this action on September 17, 2002, by filing a

complaint in this Court alleging that the United States Department of the Army[1] violated the Rehabilitation Act of 1973, §501, as amended;  29 U.S.C. §§791 and 794; and Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. §2000e by discriminating against him based on his disability and retaliating against him for engaging in protected EEO activity.  Plaintiff Nadler filed an Amended Complaint on April 5, 2004.

On June 15,  2005, the Defendant filed a motion for summary judgment asserting: (1) that Plaintiff Nadler cannot establish a prima facie case of discrimination based on his disability; (2) that Plaintiff Nadler cannot show that he suffers from a disability; (3) that even if Plaintiff Nadler could establish a prima facie case, Plaintiff Nadler has failed to rebut the Defendant's legitimate, non-discriminatory, and non-retaliatory reasons for its actions; and (4) that Plaintiff Nadler's failure to accommodate claims should be denied because the Defendant made more than reasonable efforts to accommodate the Plaintiff.

The Defendant has submitted evidence[2]  in support of its motion for

---

[1] Thomas White was the Secretary of the Army, a Federal governmental agency at the time of the filing of the complaint.  On November 19, 2004, Francis J. Harvey became the Secretary of the Army.  Under Fed.R.Civ.P.25(d)(1), he is automatically substituted as a party defendant in this suit.

[2] The Defendant also submitted affidavits by Robert Stauner, James Newell, and Jackie White.  The Defendant submitted exhibits, including but not limited to, requests for specificity dated December 27, 2000 and February 7, 2001; memoranda of record dated February 7, 2001

summary judgment and filed a supporting brief on June 15, 2005.   On July 7,

2005, the Plaintiff filed a brief and evidence[3] in opposition to the Defendant's

motion for summary judgment.  The Defendant filed a reply brief on July 20, 2005.

## II.  Standard of Review

### A.  Summary Judgment

Under Federal Rule of Civil Procedure 56 (c), summary judgment is proper

"if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229

F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always

bears the initial responsibility of informing the court of the basis for its motion and

identifying those portions of the pleadings or filings which it believes demonstrate

---

and May 2, 2001; a memorandum concerning assignment of an OCI investigator dated July 6, 2001; an email dated January 22, 2002; a letter scheduling a fact-finding conference dated September 11, 2001; letters from John Benn dated September 21, 2001, James Newell dated November 27, 2001, and Bob Nadler dated May 14, 2002; a return to work slip dated February 20, 2002; an EEO Counselor's report.

[3] The Plaintiffs submitted the depositions of Dr. John Thomas Sandy, James Newell, and Robert Andrew Nadler. The Plaintiff  submitted affidavits of Robert Nadler.   The Plaintiff also submitted exhibits, including but not limited to, correspondence from Dr. Thomas Sandy dated June 8, 2001 and January 22, 2002, correspondence from Dr. David Tipton dated January 24, 2001, and correspondence from Dr. Williams Richards dated September 24, 2001, return to work authorizations by Dr. Bosserman dated May 27, 1999 and February 19, 2002, federal employee's notice of injury dated August 31, 2001, and a return to work note dated February 18, 2002.

the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on

4

summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  <u>Fitzpatrick</u>, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant

meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

## III.  Relevant Facts[4]

The Plaintiff, Bob Nadler, is a civilian employee of the Department of the Army working in the Logistics Support Activity in Redstone Arsenal, which is in Huntsville, Alabama.  (Amended Complaint, p. 2; Def. Exh. 14, Deposition of James Newell, pp. 5-6.)  Nadler is an Operations Research Analyst who is a grade 12 on the General Schedule (a GS-12).  (Def. Exh. 14, Newell Depo, p. 5.)  Nadler has been employed in the same position for twenty-one years.  (PX-Tab-12 p.1) Nadler identifies his medical conditions as "sleep disorder, insomnia, (depression), and back-pain."  (Def. Exh. 1, Plaintiff's Responses to Interrogatories, p. 9.)

---

[4] If the facts are in dispute, they are stated in the manner most favorable to the non-moving party.  See Fitzpatrick, 2 F.3d at 1115.

Regarding Nadler's insomnia, the sleep logs Nadler submitted in response to discovery requests indicate that he was sleeping an average of 5 ½ to 6 ½ hours per night.  (Def. Exh. 3 and 4.)  These logs indicate that he slept as little as four hours on one night, but as long as 7 ½ hours other nights.  (Def. Exh. 3.)  Nadler also submitted reports of three nocturnal polysomnograms.  (Def. Exh. 5-7.)  One of these reflects that Nadler slept for 4.9 hours (Def. Exh. 5); the second reflects 2.1 hours (Def. Exh. 6); and the third shows Nadler slept for 5.6 hours (Def. Exh. 7). The sleeping tests and polysomnograms were conducted while Plaintiff Nadler was medicated.

On January 29, 1999, Nadler was released from duty and placed on sick leave after presenting a doctor's letter stating that Nadler suffered from "extreme emotional distress."  (Def. Exh. 14, Newell Depo, pp. 56-57; Def. Exh. 15.)  While Nadler was on sick leave, Newell informed Nadler that the policy regarding sick leave was that an employee who was on sick leave for more than three days must receive written approval from the installation's occupational health office before returning to work.  (Def. Exh. 14, Newell Depo., pp. 56-57, 65-66, 69.)  The governing Union Agreement provides an alternative to submitting a medical certificate.  (PX-Tab16 p.1.)  On March 3, 1999, Nadler arrived at his workplace, but did not present Newell with any written authorization from the occupational

health office to return to duty.  (Def. Exh. 14, Newell Depo., pp. 56-57.)  Newell
told Nadler that he was not on official duty and carried Nadler in an annual leave
status to prevent Nadler from losing pay.  (Def. Exh. 15.)  Newell testified
regarding additional reasons supporting the policy and his decision not to let
Nadler work without proper authorization: "[Nadler] was under psychiatric care.
Now, my obligation as a supervisor is if you are under psychiatric care and do not
have a release you're not coming into my workplace with my other employees."
(Def. Exh. 14, Newell Depo., pp. 65-66.)  Newell testified that approximately 30
days elapsed between the date Nadler showed up to work and the date that Nadler
got permission from occupational health to return to work.  (Def. Exh. 14, Newell
Depo., pp. 60-61.)

        In May 1999, Newell allowed Nadler to work on a modified work schedule
to accommodate Nadler's insomnia.  Newell wrote to Nadler to inform him of
Newell's recommendation that Nadler be allowed to arrive at 9:15 am every day,
take 45 minutes for lunch, and work until 6:00 pm.  (Def. Exh. 16.)  This work
schedule was a departure from the normal duty hours that LOGSA employees were
typically allowed to work. (Def. Exh. 17.)  Typical work schedules at LOGSA
included hours as early as 6:30 am - 3:15 pm, or hours as late as 8:00 am - 5:45 pm.
(Id.)  The schedule Newell recommended to accommodate Nadler's condition even

departed from the "core time" that all LOGSA employees were expected to work – from 8:00 am until 3:00 pm.  (Id.)  Nadler's compressed work schedule initially began in 1984 and specifically commenced with Mr. Newell in 1994.  (Def. Exh. 14, Newell Deposition, pp. 24-25.)   Under a compressed schedule Nadler began working in 1998, for each two-week pay period, Nadler worked eight nine-hour days (from 9:15 am until 6:00 pm), then one eight-hour day, and had a day off every other Friday.  (Def. Exh. 14, pp. 49-50.)

In approximately June 2000, Newell testified that he began to notice Nadler standing up for no apparent reason.  (Def. Exh. 14, Newell Depo, pp. 124-25.)  Nadler had lifted his computer monitor off of his desk and placed it up on top of a partition.  (Id. p. 127.)  When questioned by Mr. Newell as to why he was doing this with his monitor, Nadler explained to Mr. Newell that he was working standing because of back pain and could not put pressure on his sciatic nerve. Nadler has a back condition known as grade II Spondylolisthesis; a diagnosis which was confirmed by X-ray, CAT scan, Myelogram, and MRI.  (PX-Tab 12-p.1.)  Newell believed that the monitor could fall and injure the person in the space next to Nadler, so Newell instructed Nadler to put the monitor back down on the desk.  (Id. pp. 127-129.)  Although Newell had allowed Nadler to work from a standing position for three weeks in 1999, he insisted that Nadler work sitting in

2000.  (PX-Tab 12 p. 12)

Regarding Nadler's back injury, the "Physical Activity Report" signed by Nadler's physician on June 20, 2000, did not limit Nadler's ability to lift objects or engage in any physical activity; Nadler was only to avoid "prolonged sitting" for a four-week period.  (Def. Exh. 8.)  In June 2000, Nadler's physical therapist recommended that Nadler be allowed to "change posture as needed." (Def. Exh. 12.)  In September 2000, the same therapist said that Nadler should "change positions or stand as needed."  (Def. Exh. 13.)  On July 31, 2001, another medical care provider wrote that Nadler should be limited to "occasional" sitting.  (Def. Exh. 9.)  But the following week, on August 2, 2001, another provider wrote that the only limitation on Nadler's physical activity was "no prolonged sitting."  (Def. Exh. 10.) As of October 17, 2002, Nadler's Chiropractor recommended that Nadler have only "a short break" from sitting, during which time he could "stand up and walk around briefly."  (Def. Exh. 11.)

During the ten days in the December 2000 - January 2001 holiday period, there were eight days in which Nadler did not meet the minimum attendance requirements.  (Def. Exh. 14, Newell Depo., pp. 140-141.)  Newell charged Nadler with being absent without leave for each of those days, except for three days when Nadler showed Newell that he had sent electronic mail (e-mail) messages.  (Id., pp.

142-143.)

## IV. Applicable Substantive Law and Analysis

### A. Rehabilitation Act

_____The Rehabilitation Act ("the Act") prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability.  29 U.S.C §791.  "The standard for determining liability under the Rehabilitation Act is the same as that under the ADA." Sutton v. Lader, 185 F.3d 1203, 1207 n.5  (11th Cir. 1999).  In the absence of direct evidence, an ADA violation based on circumstantial evidence is analyzed using the traditional McDonnell-Douglas burden-shifting scheme commonly used in Title VII employment discrimination cases. Wascura v. City of South Miami, 257 F. 3d 1238, 1242 (11th Cir. 2001). Under the McDonnell-Douglas framework, the plaintiff must first establish a prima facie discrimination case. McDonnell-Douglas v. Green, 411 U.S. 792, 802-04 (1973).  If the plaintiff meets this burden, the defendant must articulate a legitimate, nondiscriminatory reason for the allegedly discriminatory activity.  Id.  If the defendant meets its burden of production, the plaintiff must present concrete evidence, sufficient for a reasonable jury to conclude that the articulated reason is pretextual, in the form of specific facts that either show that a disability played an impermissible role in the employer's

decision or that the proffered nondiscriminatory reasons are unworthy of credence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).

To establish a prima facie case of discrimination under the Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as a result of his disability." Sutton v. Lader, 185 F.3d 1203, 1207 (11th Cir. 1999); Gordon v. E.L Hamm & Assoc.Inc., 100 F.3d 907, 910 (11th Cir. 1996); Severino v. North Fort Myers, Fire Control Dist, 935 F.2d 1179, 1183 (11th Cir. 1991). "The Act defines 'individual with a disability' as any person who: '(I) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such impairment; or (iii) is regarded as having such an impairment.'" 29 U.S.C. § 705(20)(B); Sutton v. Lader, 185 F.3d 1203, 1208 (11th Cir. 1999); Mullins v. Crowell, 228 F.3d 1305 (11th Cir. 2000). Plaintiff Nadler must show three elements to establish that he suffers from a disability within the Act. First, Plaintiff Nadler must be impaired. Second, Plaintiff Nadler must identify a life activity that he claims has been limited and show that it is a major life activity under the Act. Finally, he must show that the major life activity is substantially limited by the impairment. Rossbach v. City of Miami, 371 F.3d 1354, 1357 (11th Cir. 2004).

Plaintiff Nadler alleges that he is disabled and impaired because he suffers from depression and insomnia.[5]  The regulatory definition of a "disability" is a physical or mental impairment which is: (1) any physiological disorder, condition, cosmetic disfigurement, or anatomical loss affecting one or more of the body systems—neurological, musculoskeletal, special sense organs, respiratory, cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrine; or (2) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.  29 C.F.R. § 1630.2(h).

Plaintiff Nadler further alleges that his depression and sleep disorder are impairments that substantially limit the major life activity of sleeping.  The regulations interpreting the Act define major life activities as "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking,

---

[5] Plaintiff Nadler also alleges that he suffers from back pain.  Plaintiff Nadler has not presented any evidence that he is disabled as a result of his back pain.  Plaintiff Nadler identifies work as a  major life activity that is substantially limited by his back pain.  Although Plaintiff Nadler alleges that his ability to work is a major life activity, he has not presented sufficient evidence that his back pain substantially limits his ability to work.  The documentation provided by Plaintiff Nadler directs him to avoid prolonged sitting and lifting for a short period of time. Since Plaintiff Nadler is instructed to avoid prolonged sitting and lifting for a short period of time only, the Court finds that Plaintiff Nadler's back pain does not rise to the level of a disability. See Dupre v. Charter Behavorial Health Sys. Of Lafayette, Inc., 242 F.3d 610, 614 (5th Cir. 2001)(holding that a plaintiff was not significantly restricted as compared with the average person's ability to sit where plaintiff could sit in one place for up to one hour at a time).

breathing, learning, and working." <u>Rossbach v. City of Miami</u>, 371 F.3d 1354 (11th Cir. 2004); 45 C.F.R. § 84.3(j)(2)(ii); <u>See</u> <u>also</u> <u>Mullins</u>, 228 F.3d 1313, <u>citing</u> 29 C.F.R. § 1614.203(a)(3).[6] If the activity is not defined in the regulations as a major life activity, the activity must be significant to everyday life.  <u>Bragdon v. Abbott</u>, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).  Some courts have found that sleeping constitutes a major life activity. <u>Rossbach v. City of Miami</u>, 371 F.3d 1354 (11th Cir. 2004); <u>See</u> <u>also</u> <u>Pack v. Kmart Corp.</u>, 166 F.3d 1300, 1305 (10th Cir. 1999).

To establish that Plaintiff suffers from a disability within the Act, Plaintiff Nadler must also show that the major life activity is substantially limited by the impairment.  A person is substantially limited if he is  "significantly restricted as to the condition, manner or duration under which the average person in the general population can perform the same major life activity." <u>Rossbach</u>, 371 F.3d at1357 (quoting 29 C.F.R. § 1630.2(j)(1)).  Whether an impairment substantially limits a major life activity is to be determined in light of: (1) the nature and severity of the impairment; (2) its duration or expected duration; and (3) its permanent or long term impact, or its expected permanent or long-term impact. 20 C.F.R. §

---

[6] Courts may rely on regulations promulgated by the EEOC with regard to the ADA and the Rehabilitation Act.  <u>Gordon v. E.L.Hamm & Assocs. Inc.</u>, 100 F.3d 907, 911 (11th Cir. 1996).

1630.2(j)(2).  Johnston v. Henderson, 144 F. Supp. 2d 1341, 1350 (D. Fla. 2001),

aff'd, 277 F.3d 1380 (11th Cir. 2001).   Although Plaintiff testified that he has

suffered from his disabilities since 1988, Plaintiff Nadler has not shown that

difficulty sleeping as a result of depression substantially limits his ability to sleep.

The Defendant provided evidence of sleep logs submitted by Plaintiff that indicate

that Plaintiff Nadler was sleeping an average of 5 ½ to 6 ½ hours per night.

(Def.Exh.3 and 4.)  The logs indicate that he slept as little as four hours on one

night, but as long as 7 ½ hours on other nights.[7]  (Def.Exh.3.)  Plaintiff Nadler

asserts that the polysomnograms and sleep logs reflected studies that were

conducted while he was medicated.   Mitigating measures must be taken into

account in judging whether an individual possesses a disability.  Albertson's Inc.

v. Kirkingburg, 527 U.S. 555, 565 (1999).  The Supreme Court has held that "[a]

person whose physical or mental impairment is corrected by medication or other

measures does not have an impairment that presently 'substantially limits' a major

life activity."  Sutton v. United Air Lines, Inc., 527 U.S. 471, 482-83 (1999).

Assuming, however, that Plaintiff Nadler's major life activity of sleeping is

substantially limited by his impairments, Plaintiff Nadler has presented sufficient

---

[7] Plaintiff Nadler submitted reports of three nocturnal polysomnograms.  (Def.Exh. 5-7.)
One of these reflects that Plaintiff Nadler slept for 4.9 hours (Def.Exh. 5); the second reflects 2.1
hours (Def.Exh.6); and the third shows that Plaintiff Nadler slept for 5.6 hours. (Def.Exh.7).

evidence that he was "otherwise qualified" under the prima facie case of discrimination under the Act.   The courts have defined an "otherwise qualified" handicapped individual as an individual with a disability who with or without reasonable accommodations, can perform the essential functions of his job. Jackson v. Veteran Administration, 22 F.3d 277, 281 (11th Cir. 1994).   The Supreme Court has determined that a person is otherwise qualified if he is "one who is able to meet all of a program's requirements in spite of his handicap." Southeastern Community College v. Davis, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979).   There is a two-part test in determining whether an employee is an otherwise qualified individual.   First, the court must determine if the employee can perform the essential functions of the job.   If the employee can not perform the essential functions of the job, then the court must determine whether there existed any reasonable accommodation by the employer that would allow the employee to perform those functions.   Ditty v. Johnson, 2005 WL 2416010 (Sept. 9, 2005 M.D.Ga.)(citing Jackson, 22 F.3d at 281).

The Defendant argues that Plaintiff Nadler could not perform the essential functions of the job because there were several periods of Plaintiff Nadler's employment when he  was constantly absent or tardy.   Therefore the  Defendant argues that because Plaintiff Nadler did not come to work on time and follow time

16

and attendance practices, he could not fulfill the essential function of his employment, that of being present on the job, and therefore was not otherwise qualified." See Jackson, 22 F.3d at 278.  Since regular and timely attendance is an essential function of Plaintiff Nadler's job, he is not considered "otherwise qualified" under the first prong.  However, the Court must determine whether there existed any reasonable accommodation by the employer that would allow the employee to perform those functions.  Plaintiff has provided evidence that he requested an accommodation.  He was provided a compressed work schedule while employed with the Defendant, however, Plaintiff Nadler's supervisor, Mr. Newell, discontinued his compressed work schedule.  An employer is required to make a reasonable accommodation to the known physical or mental limitations of a qualified applicant or employee with a disability unless it can show that the accommodation would impose an undue hardship on the business.  See 38 C.F.R. §18.412(a); Jackson, 22 F.3d at 279.  Although the Defendant asserts that Plaintiff Nadler did not provide medical documentation notifying the Defendant that Plaintiff Nadler needed a modified schedule due to his insomnia and depression, the Defendant was aware of Plaintiff Nadler's ailments and had provided him a modified schedule for over 17 years.  The Court finds that Plantiff Nadler has satisfied the second prong of a prima facie case under the Act that he was

17

"otherwise qualified" for the position.

Plaintiff has satisfied the third element of the prima facie case that he was subjected to unlawful discrimination as a result of his disability. Plaintiff alleges that he was subjected to unlawful discrimination as a result of his disability because his supervisor, Mr. Newell, failed to allow Plaintiff Nadler to return to work after his return from sick leave, imposed AWOL sanctions, and refused to allow Plaintiff Nadler to work while standing.[8] The Defendant asserts that Plaintiff

---

[8] As noted in footnote 4, Plaintiff Nadler has not presented sufficient evidence that his back pain is a disability under the Act. Even assuming, however, that his back pain is a disability, Plaintiff Nadler cannot show that he was not allowed to stand up to work solely because of his alleged disability of back pain. Plaintiff Nadler alleges that the Defendant discriminated against him because the Defendant would not accommodate Plaintiff Nadler's request to allow him to stand while working. Plaintiff Nadler alleges that when he attempted to work from a standing position to accommodate his injury, Mr. Newell specifically directed Plaintiff Nadler to remain seated while working. The Defendant alleges that Plaintiff Nadler has not produced any evidence that standing up while working is necessary. The Defendant alleges that none of the letters from his medical care providers state that he should be allowed to remain standing while working. (Def.Exh.8-13.) The Defendant asserts that neither of the two letters from medical care providers in June 2000 require Plaintiff Nadler to stand while working. One simply prohibits prolonged sitting while the others state that he should change posture as needed. The Defendant asserts that he instructed Plaintiff Nadler to put the monitor back down on the desk because Plaintiff Nadler did not tell him that he had been instructed by a physician that he needed to work standing up. The Defendant asserts that Mr. Newell allowed Plaintiff Nadler to securely sit the monitor on top of the partition once Plaintiff Nadler provided him with statements from a physical therapist that advised him that Plaintiff Nadler should be allowed to adjust his posture. This Circuit has held that a personnel action is not "adverse" merely because the employee dislikes it or disagrees with it. Doe v. DeKalb County School District. 145 F.3d 1441, 1449-50. Neither "every unkind act," Id. at 1449 (quoting Wu v. Thomas, 996 F.2d 271, 273 n.3 (11th Cir. 1993)), nor "everything that makes an employee unhappy" constitutes an adverse personnel action, Id. at 1450 (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)). To be adverse, a personnel action must affect a term or condition of employment, such as termination, demotion, salary decrease, or loss of benefits. See Wu, 996 F.2d at 273. "A term or condition of employment may be said to have been affected if there is a

Nadler cannot satisfy the third element of the prima facie case that he was subjected to unlawful discrimination as a result of his disability because Plaintiff Nadler cannot demonstrate that the above actions were based solely on his disability.

<u>Failure to Allow Nadler to Return to Work</u>

Plaintiff Nadler claims that when he returned from extended sick leave, Mr. Newell refused to allow Plaintiff Nadler to return to work without a doctor's note, requiring Plaintiff Nadler to incur three months of annual leave.  (Complaint, p. 3, ¶ 17.)  On January 29, 1999, Plaintiff Nadler was released from duty and placed on sick leave after presenting a doctor's letter stating that Plaintiff Nadler suffered from "extreme emotional distress."  (Def. Exh. 14, Newell Depo, pp. 56-57; Def. Exh. 15.)  While Plaintiff Nadler was on sick leave, Mr. Newell informed Plaintiff Nadler that the policy regarding sick leave was that an employee who was on sick leave for more than three days must receive written approval from the installation's occupational health office before returning to work.  (Def. Exh. 14, Newell Depo.,

---

'demonstrable adverse impact on future employment opportunities or performances.'"
<u>Merriweather v. Alabama Dep't of Public Safety</u>, 17 F. Supp. 2d 1260, 1274 (M.D. Ala. 1998) (quoting <u>Fortner v. Kansas</u>, 934 F. Supp. 1252, 1266 (D. Kan. 1996), <u>aff'd</u>, <u>Fortner v. Rueger</u>, 122 F.3d 40 (10th Cir. 1997)).  Plaintiff Nadler has not presented sufficient evidence that Mr. Newell's denial of permission to Plaintiff Nadler to stand while working without presenting a medical certificate, is an adverse action.

pp. 56-57, 65-66, 69.)  Plaintiff asserts that he was unable to get a medical certificate from his doctor, Dr. Tipton, due to a personal tragedy that happened in Dr. Tipton's life.  Plaintiff provided evidence that his appointments with Dr. Tipton were repeatedly cancelled and rescheduled.  Plaintiff also provided evidence that he regularly kept in contact with Mr. Newell.  Plaintiff Nadler further alleges that he was subjected to discrimination because Mr. Newell charged Plaintiff Nadler with annual leave time without his permission.

The Court finds that Mr. Newell did not allow Plaintiff Nadler back to work because of his extended sick leave due to his suffering from severe emotional stress.  The primary reason why Plaintiff Nadler was not allowed back to work was related to his depression.  Accordingly, the Court finds that Plaintiff Nadler was not allowed back to work solely because of his disability.  Plaintiff has satisfied the third element of the prima facie case that the Defendant did not allow Plaintiff to return to work and placed him on annual leave solely because of his disability.

AWOL Sanctions

Plaintiff Nadler alleges that Mr. Newell took adverse action against him by falsely accusing him of being AWOL from December 2000 to January 2001 in an effort to discriminate against him as a handicapped individual.  The Defendant alleges that Plaintiff Nadler did not meet the minimum attendance requirements

20

during the holiday period from  December 2000 to January 2001.  Out of the ten days of the holiday period, Plaintiff Nadler was absent or tardy for eight of the days.  Mr. Newell charged Plaintiff Nadler with being absent without leave for each of the days he did not meet the attendance requirements as documented by Mr. Richard Carle, the acting supervisor, except for three days when Plaintiff Nadler showed Mr. Newell that he had sent electronic mail messages.  Plaintiff Nadler was carried AWOL for the entire day once and on ten days he was carried AWOL for shorter  periods of time ranging from 35 minutes to two hours.  The Defendant presented evidence that Mr. Newell gave Plaintiff Nadler the opportunity to explain his absences, but Plaintiff Nadler declined.  The Court finds that Plaintiff Nadler has not presented sufficient evidence that Mr. Newell placed him on AWOL status solely because of his disability.

Denial of a Compressed Work Schedule

Plaintiff Nadler asserts that Mr. Newell refused to allow Plaintiff Nadler to work a flexible or compressed work schedule to accommodate his depression and insomnia in February 2002 until Mr. Newell retired. (Complaint, p.3 ¶ 10; Def.Exh. 1, p.2.)  Plaintiff asserts that he had been previously approved for a compressed work schedule.  (PX-Tab 12 p. 3 at ¶15,16,17).  The Defendant asserts that Plaintiff Nadler did not present any medical documentation during this time period that

required Newell to allow Plaintiff Nadler to work a compressed work schedule. The documentation Plaintiff Nadler presented in February 2002 related only to Plaintiff Nadler's back.  The medical care providers recommended that Plaintiff Nadler avoid prolonged sitting for two weeks. (<u>Id</u>.)  In a memorandum Mr. Newell wrote to Plaintiff Nadler in February 2002, Mr. Newell rescinded Plaintiff Nadler's compressed work schedule, based on the medical documents that Plaintiff Nadler had given him. (Opposition brief, tab 11.)  The last paragraph of that memorandum explained: "[i]f you require any adjustments or changes to this tour of duty schedule you must provide adequate documentation identifying the hours you are able to work and the reasons you cannot comply with this assignment and tour of duty." (<u>Id</u>.)

The Court finds that Plaintiff Nadler has not presented sufficient evidence that the Defendant denied him a compressed work schedule in order to discriminate against him based on his disability.

Even assuming, however, that Plaintiff Nadler can satisfy the third prong as to all of the Defendant's challenged actions, Plaintiff Nadler cannot rebut the Defendant's legitimate non-discriminatory reasons for its actions.  The Defendant asserts that it required Plaintiff Nadler to get approval before returning to work from psychiatric care because the Defendant did not want Plaintiff Nadler to pose

a threat to the safety of the other employees.  The Defendant asserts that it placed Plaintiff Nadler in an absent without leave status from December 2000 to January 2001 because, of the ten days Plaintiff Nadler was scheduled to work, Plaintiff Nadler did not meet the minimum attendance requirements for eight of the days. Mr. Newell did not charge Plaintiff Nadler with being absent for three of the days because Plaintiff Nadler showed Mr. Newell electronic mail messages he had sent. The Defendant did not allow Plaintiff Nadler to work a compressed work schedule because Plaintiff Nadler did not present any medical documentation in February 2002 that required Newell to allow Plaintiff Nadler to work a compressed work schedule.  In addition, the Defendant asserts that allowing Plaintiff Nadler to arrive to work late or allowing him more flexibility would be unfair to Plaintiff Nadler's coworkers.  While it may be convenient for Nadler to show up to work late in the morning, tasks that inevitably would come up earlier in the morning would fall on the shoulders of Nadler's coworkers.  The Defendant asserts that such a schedule would place upon the agency an undue burden of making last-minute provisions for Nadler's work to be done by someone else.  The Court finds that the Defendant has met its burden of production by articulating legitimate nondiscriminatory reasons for its actions.

If the defendant meets its burden of production, the plaintiff must present

evidence sufficient for a reasonable jury to conclude that the articulated reason is pretextual by presenting concrete evidence in the form of specific facts that either show that a disability played an impermissible role in the employer's decision or that the proffered nondiscriminatory reasons are unworthy of credence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000). The Court finds that Plaintiff Nadler has not presented sufficient evidence that the Defendant's articulated reasons are pretextual by presenting concrete evidence in the form of specific facts that either show that a disability played an impermissible role in the employer's decisions or that the proffered nondiscriminatory reasons are unworthy of credence. Accordingly, the Defendant's motion for summary judgment is due to be GRANTED as to Plaintiff's handicap discrimination claim.

## B. Retaliation

Plaintiff Nadler alleges in his complaint that the Defendant charged him for being AWOL while he was pursuing his EEO claims. Generally, to establish a prima facie case of retaliation a plaintiff must show: (1) that he engaged in protected activity; (2) that his employer was aware of that activity; (3) that he suffered an adverse employment action; and (4) there was a causal link between his protected activity and the adverse employment action. Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999)(citing Little v. United Techs., 103 F.3d 956, 959

24

(11th Cir. 1997)).

Although Plaintiff Nadler alleges in his complaint a retaliation claim, the Plaintiff has not produced any evidence to establish a prima facie case of retaliation.  "A part responding to summary judgment may not rest on [his] pleading to demonstrate the presence of an issue of fact."  Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1533 (11th Cir. 1992).  Accordingly, the Court finds that the Plaintiff has not established that the Defendant retaliated against him.  Therefore, Plaintiff's retaliation claim fails as a matter of law.

## V.  Conclusion

For the reasons set forth above, the Defendant's motion for summary judgment is due to be **GRANTED** as to all claims.

**DONE** and **ORDERED** this 10th day of April, 2006.

**VIRGINIA EMERSON HOPKINS**
**United States District Judge**

25